**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF PENNSYLVANIA**
_____

DAVID & SANDRA LAURIE.,

                      Plaintiffs,

         v.

PLP-CTS HOLDINGS, INC.
CTS-CSI HOLDINGS, INC.
COMBINED SYSTEMS, INC.
COMBINED TACTICAL SYSTEMS, INC.,
                      Defendants,
_____

Civil Action No.
2:21-CV-901

**MEMORANDUM OF LAW IN SUPPORT**
**OF DEFENDANTS' MOTION TO DISMISS**

**BARCLAY DAMON LLP**
Attorneys for Combined Systems, Inc.
Office and Post Office Address
80 State Street
Albany, New York 12207-2543
Telephone (518) 429-4200

Yvonne Hennessey, Esq.
Danielle Mettler-LaFeir, Esq.

## **TABLE OF CONTENTS**

Table of Contents ........................................................................................................................... i

TABLE OF AUTHORITIES ........................................................................................................ ii

PRELIMINARY STATEMENT ................................................................................................... 1

STATEMENT OF RELEVANT FACTS ...................................................................................... 3

STANDARD OF REVIEW ........................................................................................................... 9

ARGUMENT ............................................................................................................................... 11

POINT I    PLAINTIFFS LACK STANDING TO CHALLENGE ACTIVITIES ................... 11

    A. Plaintiffs Have Not and Cannot Sufficiently Allege An Injury-In-Fact
    Related To Off-Site Activities in Crawford County ............................................. 12

    B. Plaintiffs Fail To Allege A Claim Related To Testing At The Mercer
    County Site That Can Be Redressed By A Favorable Decision .......................... 14

POINT II   PLAINTIFFS' 2011 AND 2012 CLAIMS ARE  BARRED BY
    THE STATUTE OF LIMITATIONS .................................................... 16

POINT III  PLAINTIFFS FAIL TO STATE A CLAIM  FOR WHICH RELIEF
    CAN BE GRANTED ............................................................................ 17

    A. Plaintiffs Failed to Adequately Plead An Ongoing Violation ............................. 17

    B. Plaintiffs' Claims of Past Violations Lack Plausibility ....................................... 18

CONCLUSION ............................................................................................................................ 19

# TABLE OF AUTHORITIES

**Cases**

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) .......................................................................... 9

*Balistreri v. Pacifica Police Dep't*, 901 F.2d 696 (9th Cir. 1988)................................. 9

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ........................................................... 9

*Burtch v. Milberg Factors, Inc.*, 662 F.3d 212 (3d Cir. 2011) ..................................... 10

*Cambrians for Thoughtful Dev., U. A. v. Didion Milling, Inc.*, 571 F. Supp. 2d 972 (W.D. Wis. 2008) ...................................................................................................................... 14

*Chapman v. CKE Rests. Holdings, Inc.*, 2020 U.S. Dist. LEXIS 43020 (E.D.N.C. Mar. 12, 2020) ........................................................................................................................... 15

*Chicago Steel & Pickling Co. v. Citizens for a Better Env't*, 523 U.S. 83 (1998)........................ 14

*City of Pittsburgh v. West Penn Power Co.*, 147 F.3d 256 (3d Cir. 1998) ..................................... 9

*Duquesne Light Co. v. United States EPA*, 166 F.3d 609 (3d Cir. 1999)..................................... 11

*Env't Tex. Citizen Lobby v. Exxonmobil Corp.*, 968 F.3d 357 (5th Cir. 2020) ........................... 15

*Finkelman v. Nat'l Football League*, 810 F.3d 187 (3d Cir. 2016)............................... 9

*Goodman v. Pa. D.E.P.*, 2008 U.S. Dist. LEXIS 50690 (E.D. Pa. June 30, 2008) ..................... 10

*Green v. Joy Cone Co.*, 278 F. Supp. 2d 526 (W.D. Pa. 2003) ..................................... 9

*L.E.A.D. Grp. of Berks v. Exide Corp.*, 1999 U.S. Dist. LEXIS 2672 (E.D. Pa. Feb. 19, 1999).. 11

*Lujan v. Defs. of Wildlife*, 504 U.S. 555 (1992) ......................................................... 11

*Maio. v. Aetna*, 221 F.3d 472 (3d Cir. 2000) ............................................................. 9

*Miller v. Nissan Motor Acceptance Corp.*, 362 F.3d 209 (3d Cir. 2004) ..................................... 11

*Nat'l Parks Conservation Ass'n, Inc. v. Tenn. Valley Auth.*, 502 F.3d 1316 (11th Cir. 2007)...... 16

*New Jersey v. RRI Energy Mid-Atlantic Power Holdings, LLC*, 960 F. Supp. 2d 512 (E.D. Pa. 2013) ........................................................................................................................... 16

*PennEnvironment v. PPG Indus.*, 964 F. Supp. 2d 429 (W.D. Pa. 2013) ..................................... 11

*Pub. Interest Research Grp. v. Magnesium Elektron*, 123 F.3d 111 (3d Cir. 1997) ................... 12

*Pub. Interest Research Grp. v. Star Enter.*, 771 F. Supp. 655 (D.N.J. 1991)............................... 12

*Public Int. Research Grp. v. Powell Duffryn*, 913 F.2d 6 (3d Cir. 1990) ..................................... 12

*Sierra Club v. Otter Tail Power Co.*, 615 F.3d 1008 (8th Cir. 2010) ........................................... 16

*Sierra Club v. Portland GE*, 663 F. Supp. 2d 983 (D. Or. 2009) ................................................. 16

*Sixth Angel Shepherd Rescue Inc. v. West*, 790 F. Supp. 2d 339 (E.D. Pa. 2011)................. 14, 15

*Spokeo, Inc. v. Robins*, 136 S. Ct. 1540  (2016) ........................................................................ 12

*Star Enter. v. EPA*, 235 F.3d 139 (3d Cir. 2000)....................................................................... 11

**State and Federal Statutes**

28 U.S.C.S. § 2462.................................................................................................................... 18

35 Pa. Stat. Ann. § 4010.3 ........................................................................................................ 17

## PRELIMINARY STATEMENT

Combined Systems, Inc. ("CSI"), PLP-CTS Holdings, Inc. and CTS-CSI Holdings, Inc. (collectively "Defendants") submit this memorandum of law in support of their motion to dismiss Plaintiffs' claims that Defendants violated the Clean Air Act ("CAA") and Pennsylvania Air Pollution Control Act ("APCA") by releasing chloroacetophenone ("CN") and hexachloroethane ("HC"), and ortho-chlorobenzalmalononitrile ("CS") into the air at CSI's facility located on Kinsman Road in Mercer County as well as at an off-site location in Crawford County.

The instant lawsuit is just the latest foray by Plaintiffs, targeted at Defendants, in the hopes of putting CSI, a recognized leader in the design, manufacture, and marketing of security products for the global defense and law enforcement markets, out of business.  As detailed herein, Plaintiffs' claims fail on multiple, independent grounds.

At the outset, Plaintiffs lack standing.  In this regard, Plaintiffs' claims span activities at two sites – one that neighbors their home in Mercer County and another that is located in an entirely different county (Crawford County), more than 13 miles away from their home.  Plaintiffs, however, lack standing to challenge *any* alleged activities by CSI in Crawford County.  Not only do Plaintiffs fail to allege *any* injury in fact regarding CSI's activities in Crawford County, they could not do so given their distance from the site.  With respect to the remaining claims concerning CSI's facility in Mercer County, Plaintiffs' claims lack the requisite redressability.

Even assuming arguendo that Plaintiffs have met their burden of establishing standing, many of Plaintiffs' claims also are time barred while all fail to state a claim upon which relief can be granted.  Given that the applicable statute of limitations is five years for a CAA citizens suit and seven years for Plaintiffs' claims under Pennsylvania's APCA, Plaintiffs' claims are time-barred with respect to alleged activities that predate April 23, 2014 (*i.e.*, Complaint, ¶ 35(a)-(g)).

For those claims that are timely, allegations of a continuing violation are inadequately pled and have been entirely disproven by the Pennsylvania Department of Environmental Protection's ("DEP") via an independent and thorough compliance review such that they lack plausibility.  As for repeated violations, the very same testing range logs referenced in support Plaintiffs' allegations confirm that CSI did not test any products containing CN, HC or CS outdoors at its Mercer County facility on the dates detailed in the Complaint.

Accordingly, Plaintiffs' claims should be dismissed *in toto* with prejudice.

## STATEMENT OF RELEVANT FACTS

**Combined Systems Inc. Operations**

Founded in 1981, CSI is the recognized leader in the design, manufacture, and marketing of security products for the global defense and law enforcement markets. Affirmation of Donald J. Smith, dated September 13, 2021 ("Smith Affidavit") ¶ 7.  As the premier supplier of less-lethal munitions and launching systems, CSI manufactures products for riot control, police tactical teams, corrections officers and military units.  *Id.* ¶ 8.  CSI's products are used by the United States Military, the Central Intelligence Agency, the Federal Bureau of Investigation, law enforcement agencies, prison authorities and allied nations across the world as permitted by the United States Department of State and Commerce.  *Id.* ¶ 9.

CSI owns and operates a manufacturing facility on approximately 150 acres of land located at 388 Kinsman Road, Greene Township, in Mercer County, Pennsylvania (the "CSI Facility"). *Id.* ¶ 10.  The CSI Facility consists of several buildings and currently employs approximately 184 employees.  *Id.* ¶ 11.  At the CSI Facility, CSI manufactures less-lethal munitions including sting balls, warning signals, bang products, smoke products, tear gas, canisters, fuses and rubber bullets. *Id.* ¶ 12.   As part of its production process, CSI test fires many of its products, including smoke products and canisters that result in fugitive air emissions, for quality control purposes. *Id.* ¶ 13. Test fires occur both in an indoor testing chamber, the Smoke Canister Test Chamber ("Test Chamber"), as well as outdoors.  *Id.* ¶ 14.

Many of CSI's products do not result in emissions of hazardous air pollutants ("HAP") or irritants when fired.  *Id.* ¶ 15.   These products are tested outdoors at the CSI Facility for quality control purposes.  *Id.* ¶ 16.  Some of CSI's products do contain material that results in emissions of HAPs when fired, including CN and HC, and non-HAP irritant emissions of CS. *Id.* ¶ 17.

3

Products containing CN, HC and/or CS are not tested outdoors at the CSI Facility but rather are tested in the indoor Test Chamber.  *Id.* ¶ 18.

**The Facility's Air Permit**

Air emissions from the CSI Facility's operations are subject to a State Only Operating permit (No. 43-00384) ("Air Permit") issued by the Pennsylvania Department of Environmental Protection ("DEP").  *See* Smith Aff., ¶ 19, Exh. A ("Air Permit").  CSI's existing Air Permit was issued on December 15, 2015, and has an expiration date of November 30, 2020.  *Id.* p. 1.  Based on CSI's timely submittal of an Air Permit renewal application to DEP on May 7, 2020, which application is currently pending, the terms and conditions of CSI's existing Air Permit are continued and remain in full force and effect pending DEP's processing of the renewal application.  *See* APCA § 6.1(4); *see also* Smith Aff., Exh. B, p. 16 ("DEP Report").

**CSI's Outdoor Testing of Products**

The outdoor testing/firing of products that result in non-HAP emissions, but do not result in emissions of CS, HC, CN, is permitted by CSI's Air Permit.  *See* Smith Aff., ¶¶ 26, 27; Air Permit, p. 45.  The emissions associated with the outdoor testing/firing of products is designated in the Air Permit as Source 111.  *Id.*  CSI's Air Permit allows CSI to emit fugitive particulate emissions associated with testing of its products, including testing of smoke canisters and olerorein capsicium ("OC") canisters (a.k.a. pepper spray) that do not contain CS, HC or CN.  *Id.*  Section D of the Air Permit requires that CSI keep a daily log of the outdoor testing of these products that documents: date and time of all tests; weather conditions including wind direction and speed; types and quantities of units tested; whether any emissions crossed property lines; and, any weather conditions which cause the smoke to fail to dissipate (such as an inversion).  *Id.* p. 29.

4

The Air Permit further requires CSI to stop field testing if emissions cross property lines (testing can be resumed when conditions that cause emissions to cross property lines no longer exists), and, to stop field testing if weather conditions create a situation where the smoke is not dissipating (such as an inversion).  *Id.*  CSI diligently keeps these required logs, and stops testing if any visible particulate emissions from such testing crosses property lines.  Smith Aff., ¶ 24.

CSI is not permitted to, nor does it, test products outdoors at the CSI Facility that contain CN, HC or CS.  Air Permit, p. 45.   CSI conducts testing outdoors at the CSI Facility *only* if those products do not result in CN, HC or CS emissions being released, including inert versions[1] of products that would otherwise contain CS, HC or CN.  Smith Aff., ¶ 27.

**CSI's Testing of Products that Contain CS, HC and CN at the Facility**

CSI is not permitted to, nor does it, test products outdoors at the Facility that contain CN, HC or CS.  Instead, CSI tests CN, HC or CS containing products in the Test Chamber located at the CSI Facility, as permitted by its Air Permit.  Air Permit, p. 45.

The Test Chamber, which is designated in CSI's Air Permit as Source 110, is used to test products manufactured by CSI that contain HAPs and irritants, including tear gas and other products that contain CS, CN, and HC. *Id.*  The Test Chamber is a small building that has a hood on the interior of the building that collects emissions and exhausts them to a Farr Gold Series model GS4 dust collector equipped with four cartridges, which exhaust is then ducted back into the Test Chamber building.  *Id.*  Put another way, it is a closed loop system that does not exhaust or emit pollutants outdoors at all – there is no stack or outdoor emissions associated with the Test Chamber.  Smith Aff., ¶ 44.

---

[1]   Inert versions of CS, HC and CN products are just like the CS, CN, HC containing-products, but do not actually contain CS, CN or HC.  Inert versions of these products are created by CSI for the purpose of conducting these field tests at the Facility. Smith Aff. ¶ 28.

Section D of the Air Permit requires that a daily inspection of the emissions collection system be conducted before and during each test conducted in the Test Chamber to ensure no release of irritant gases occurs.  Air Permit, p. 29.  It further requires a daily log to be kept of all testing conducted in the Test Chamber, including: date and time of all tests; types and quantity of units tested; record of inspection of the emissions collection system before and during the test to ensure no release of irritant gases.  *Id.* p. 28.  CSI diligently keeps the logs for any and all testing conducted in the Test Chamber.  Smith Aff., ¶ 31.

**Plaintiffs' 60-Day Notice and Further DEP Protest Complaint[2]**

On April 23, 2021, Plaintiffs provided notice to United States Environmental Protection Agency ("EPA") and DEP of their intent to file a complaint against CSI for alleged violations of CSI's Air Permit, the CAA and APCA.  *Id.* ¶ 35.   A draft of the Complaint was attached to the notice letter.  *Id.*  In addition, Plaintiffs submitted a substantial "Protest Complaint" to the DEP further detailing their concerns and alleged violations by CSI of its Air Permit, the CAA and the ACPA, which DEP has considered as comments on CSI's pending Air Permit renewal application.  *Id.* ¶ 36.

Over a period of several months, the DEP's Bureau of Air Quality conducted a detailed Full Compliance Evaluation of the Facility for the purposes of determining the Facility's compliance with its Air Permit, the CAA and the APCA. *Id.* ¶ 37. It also evaluated CSI's pending Air Permit renewal application.  *Id.* ¶ 38.

As part of this evaluation, DEP inspected the Facility on May 27, 2021, and June 8, 2021, and made several significant record requests to CSI, which CSI responded to.  *See* DEP Report, pp 1-2.  DEP visited the CSI Facility on June 8, 2021 specifically to observe both outdoor testing

---

[2] Plaintiffs' CAA Notice Letter and further Complaint to DEP follow Plaintiffs' filing of a state court action against Defendants in late 2014, which remains pending in the Mercer County Court of Common Pleas. Smith Aff., ¶ 33.

and testing in the Test Chamber.  *See id.* p. 2.  During this visit, DEP observed outdoor testing of products at the Facility, and observed *no* issues or deviations during testing.  DEP also observed *no* crossing of fugitive emissions off the CSI property.  *See id.* pp. 3, 11.  Further, DEP observed the testing of CS and smoke rounds in the Test Chamber, and observed no fugitive or visible emissions from the Test Chamber, control device or the closed bypass vent.  *See id.* p. 10.  DEP also requested from CSI and conducted a review of all of CSI's testing logs kept for January 1, 2019 through June 30, 2021.  *See id.* p. 16.

Ultimately, DEP issued its final Report on the Full Compliance Evaluation, which DEP transmitted to CSI on July 29, 2021 ("DEP Report").  Smith Aff., Exh. B The DEP Report totals sixteen pages and includes ninety-five pages of attachments.  *See id.*  It notes only two instances of noncompliance, only one of which relates to the allegations in the Complaint.[3]  *See id.* p. 4.  Pertinent here, the one instance was for the inadvertent testing of a product at the CSI Facility that contained HC more than 2 1/2 years ago in February 2019.  *See id.* p. 11.

DEP conducted a detailed analysis of the testing range logs and compared them with the product lists provided by CSI to determine whether the CSI Facility tested any products outside containing CS, CN or HC.  *Id.*  DEP ultimately found that there was no testing of any CS, CN or HC containing products at the Facility during the time frame January 1, 2019 through June 30, 2021, except on four dates (February 6, 20, 21, 21, 2019) when live testing of product 4210HC occurred.  *Id.*  CSI investigated the February 2019 testing of 4210HC, and determined that the employees inadvertently tested live rounds of product 4210HC at the CSI Facility instead of inert rounds.  *Id.*

---

[3]   The other is based on CSI being unable to locate monthly preventative maintenance records for inspections of its carbon filtration system, which is wholly unrelated to product testing, for March and September 2019 and May 2021. *See* DEP Report, p. 4.

The DEP Report contains no other compliance issues associated with the Facility. *See generally, id.* In fact, the DEP Report notes that logs and recordkeeping are well kept. *See id.* p. 8.

**Crawford County Site**

The "Crawford County site" as plaintiffs refer to it, is a third-party owned property that is located between 4350 and 4660 Brick Church Road, Atlantic, Pennsylvania. Smith Aff. ¶ 49. The owner of the Crawford County site allows CSI to utilize the property to test its products. *Id.* ¶¶ 51-52. The Crawford County site is located approximately thirteen (13) miles from Plaintiffs' property and the Facility. *Id.* ¶ 50.

**STANDARD OF REVIEW**

On a motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(6), dismissal may be based on either the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988). A complaint must allege facts to state a claim for relief that is plausible on its face. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Usually, a court only considers "the allegations contained in the complaint, exhibits attached to the complaint and matters of public record." *Green v. Joy Cone Co.*, 278 F. Supp. 2d 526, 531 (W.D. Pa. 2003) (internal quotations and citations omitted). However, "[d]ocuments that the defendant attaches to the motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to the claim; as such, they may be considered by the court." *Id.*

A claim has "facial plausibility" when the party seeking relief "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Although the Court must accept as true a complaint's well-pled facts, conclusory allegations of law and unwarranted inferences will not defeat an otherwise proper Rule 12(b)(6) motion. *See City of Pittsburgh v. West Penn Power Co.*, 147 F.3d 256, 263, n. 13 (3d Cir. 1998); *see also Finkelman v. Nat'l Football League*, 810 F.3d 187, 202 (3d Cir. 2016); *Maio. v. Aetna*, 221 F.3d 472, 500 (3d Cir. 2000) (quotations and citations omitted).

"[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . . Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations and footnote omitted). This requires a plaintiff to plead "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S at 678 (citing *Twombly*). Ultimately, the plausibility determination

is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

Under the pleading regime established by *Twombly* and *Iqbal*, a court reviewing the sufficiency of a complaint must take three steps:

1. It must "tak[e] note of the elements [the] plaintiff must plead to state a claim." *Iqbal*, 556 U.S. at 675.

2. It should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 664; *see also Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 224 (3d Cir. 2011) ("Mere restatements of the elements of a claim are not entitled to the assumption of truth." (citation and editorial marks omitted)).

3. "When there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 664.

Individuals who seek to bring a private citizen suit under the CAA must ultimately prove which, and how, the CAA's emission standards were violated. *Goodman v. Pa. D.E.P.*, 2008 U.S. Dist. LEXIS 50690, at *4 (E.D. Pa. June 30, 2008).

**ARGUMENT**

**POINT I**

**PLAINTIFFS LACK STANDING TO CHALLENGE ACTIVITIES**

The question of standing is a threshold inquiry and it is determined as of the time the action is brought.  Standing has two parts; namely Article III, which enforces the case or controversy requirement of the Constitution, and prudential standing, which embodies limits on the exercise of federal jurisdiction.  *PennEnvironment v. PPG Indus.*, 964 F. Supp. 2d 429, 444 (W.D. Pa. 2013).

Article III of the Constitution limits the jurisdiction of federal courts to an actual case or controversy and an essential component of the jurisdictional prerequisite is that a plaintiff must have standing to sue.  *See Miller v. Nissan Motor Acceptance Corp.*, 362 F.3d 209, 221 (3d Cir. 2004); *L.E.A.D. Grp. of Berks v. Exide Corp.*, 1999 U.S. Dist. LEXIS 2672, at *39 (E.D. Pa. Feb. 19, 1999).

To have constitutional standing, first, the plaintiff must have suffered an "injury in fact", such that the plaintiff experienced an invasion of a legally protected interest which is concrete and particularized, and actual or imminent, not conjectural or hypothetical.  *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992); *see also Duquesne Light Co. v. United States EPA*, 166 F.3d 609, 612-13 (3d Cir. 1999); *Star Enter. v. EPA*, 235 F.3d 139, n. 11 (3d Cir. 2000).  Second, there must be a causal connection between the injury and the conduct complained of – the injury has to be traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court.  *Lujan*, 504 U.S. at 560-61.  Third, it must be "likely," as opposed to merely speculative, that plaintiff's injury will be redressed by a favorable decision.  *Id.*  This standard is the same for state law claims brought before a federal court.  *See e.g., L.E.A.D. Grp. of Berks* 1999 U.S. Dist. LEXIS at *37 (plaintiffs were required to show Article III standing to bring claims under both the CAA and APCA).

11

**A.      Plaintiffs Have Not and Cannot Sufficiently Allege An Injury-In-Fact Related To Off-Site Activities in Crawford County**

Plaintiffs' claim that CSI conducted numerous tests of CN, CS, and HC irritants outdoors at an off-site location in Crawford County in violation of the CAA and the APCA.  Because they lack the requisite standing, and have even failed to even allege any injury in fact concerning alleged off-site activities in Crawford County, Plaintiffs' claims as they related to off-site activities fail.

In order to satisfy the injury in fact requirement in an environmental case, a plaintiff must show a connection with the geographical area that is the subject of the suit.[4]  *See, e.g., Pub. Interest Research Grp. v. Star Enter.*, 771 F. Supp. 655, 661-62 (D.N.J. 1991).  The complaint must properly allege that the plaintiffs "reside in the vicinity of, own property near, or recreate in or near the body of water into which the defendant discharges pollutants, and that the health, economic, recreational, aesthetic or environmental interests of these members are being and will be adversely affected by the discharges."  *Id.* at 662 (citations omitted); *see also Pub. Interest Research Grp. v. Powell Duffryn*, 913 F.2d 64, 71 (3d Cir. 1990).

Further a "'concrete' injury must be 'de facto'; that is, it must actually exist." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548 (2016).  Generalized grievances shared by the public at large do not provide an individual with standing.  *Pub. Interest Research Grp. v. Magnesium Elektron*, 123 F.3d 111, 120 (3d Cir. 1997).  Merely claiming a violation of the CAA is not enough to confer standing.  *See Star Enter.*, 771 F. Supp.at 665.

Here, Plaintiffs' allegations of standing *all* relate to the CSI Facility in Mercer County:

- "When Combined Systems tests its products, the smoke and gas from the tests *drifts onto the Lauries' property, which is located directly beside* the Combined Systems' facilities and testing range."  Complaint, ¶ 30 (emphasis added).

---

[4] It is important to note that Plaintiffs have not alleged standing based on use and enjoyment.

- "For years, on numerous occasions, the Lauries and their invitees have seen, heard, and smelled the *tear gas being tested beside their property*, and debris from the testing is scattered all over a seven acre portion of the Laurie's land." Complaint, ¶ 31 (emphasis added).

- "As recently as 2015, David Laurie experienced the effects of tear gas *drifting onto his property* from Combined Systems' testing." Complaint, ¶ 32 (emphasis added).

- "Mr. Laurie invited a surveyor *onto his property* …, and the surveyor was subjected to tear gas *drifting onto the property* from Combined Systems' testing. Complaint, ¶ 34 (emphasis added).

Tellingly, each and every one of Plaintiffs' alleged injuries relate to activities in Mercer County. Not one even purports to allege injury related to alleged testing in Crawford County. Rather, Plaintiffs allege only that outdoor testing in violation of CSI's Air Permit, the CAA and/or APCA occurred there. This is patently insufficient as Plaintiffs have woefully failed to show "any connection with the geographical area that is the subject of the suit." *Star Enter.*, 771 F. Supp. at 661-62.

As such, Plaintiffs have not allege a sufficient injury-in-fact related to the off-site testing in Crawford County. Nor could they do so. Indeed, Plaintiffs do not "reside in the vicinity of, or own property near," the off-site testing location,[5] or claim to use or enjoy the area near the off-site testing location such that any alleged air emissions from outdoor air testing could not adversely affect "the health, economic, recreational, aesthetic or environmental interests of the plaintiffs[.]" *Star Enter,* 771 F. Supp. at 662.

---

[5]   Plaintiffs' current residence in Mercer County is more than 13 miles away from the off-site location in Crawford County. Complaint ¶ 44-50; Smith Aff., 50.

In short, Plaintiffs have no geographical connection to the Crawford Site and have alleged no concrete or particularized harm as it relates to the alleged violations relating to off-site testing in Crawford County.  Plaintiffs therefore failed to meet their burden of establishing that they have standing to assert any claims associated with CSI's off-site activities.  Plaintiffs' claims, therefore, must be dismissed to the extent that they relate to such off-site activities.

**B.    Plaintiffs Fail To Allege A Claim Related To Testing At The Mercer County Site That Can Be Redressed By A Favorable Decision**

Plaintiffs' claim that CSI conducted numerous tests of CN, CS, and HC irritants outdoors at the CSI Facility in Mercer County in violation of the CAA, the APCA, and its Air Permit. However, even assuming arguendo a favorable outcome, Plaintiffs' claims concerning the Mercer County site are not redressible by this Court.

The final prong of the test for standing, known as redressability, requires that a plaintiff demonstrate that their injuries are likely to be redressed by a favorable decision.  *Powell Duffryn Terminals*, 913 F.2d at 73.  The redressability factor focuses on the connection between the plaintiff's injury and the judicial relief sought.  *Id.* (citing *Allen v. Wright*, 468 U.S. 737, 753 n. 19 (1984)).  In addition, standing to seek injunctive relief requires a showing that the plaintiff faces a real and immediate threat that the plaintiffs would again suffer the injury.  *See Sixth Angel Shepherd Rescue Inc. v. West*, 790 F. Supp. 2d 339, 352 (E.D. Pa. 2011).

Mere allegations of past violations are insufficient.  *See e.g., Cambrians for Thoughtful Dev., U. A. v. Didion Milling, Inc.*, 571 F. Supp. 2d 972, 977 (W.D. Wis. 2008).  "If there is no ongoing compliance problem and no possibility of a future one, injunctive-type relief and declaratory relief become inappropriate."  *L.E.A.D. Grp. of Berks*, 1999 U.S. Dist. LEXIS at *50; *see also Chicago Steel & Pickling Co. v. Citizens for a Better Env't*, 523 U.S. 83 (1998).  Instead, the question of redressability comes down to whether the defendant continued to commit violations

after the plaintiff filed suit.  *See Env't Tex. Citizen Lobby v. Exxonmobil Corp.*, 968 F.3d 357, 372 (5th Cir. 2020).

Here, Plaintiffs seek only preliminary and permanent injunctive relief enjoining CSI from conducting any future testing in violation of its Air Permit.  However, they have not alleged, nor could they, any ongoing compliance issue.  In this regard, Plaintiffs have alleged only that "upon information and belief" illegal testing continues.  Such conclusory allegations are patently insufficient.  *See* Point III (A).

Although the Complaint lists a number of alleged instances of non-compliance, the most recent date is from January 2019 – more than 30 months prior to this suit being brought.  Moreover, Plaintiffs' own "first hand" accounts of alleged violations date back to 2015 – more than 6 years ago.  Complaint ¶ 32 ("As recently as 2015 …").  And, finally, following a thorough review of the Mercer County Facility and CSI's testing activities from January 1, 2019 through June 30, 2021, DEP determined that CSI was in compliance with its Air Permit, the CAA and APCA and had been so for well over two years.  *See* DEP Report, p. 11. Indeed, based on DEP's review, CSI has been in full compliance with its Air Permit, CAA and the ACPA since January 2019, with the exception of minor, inadvertent issues.  *See generally, id.*

In short, there have been *no* violations of CSI's Air Permit, the CAA or the ACPA for well over two years.  Plaintiffs' requested relief is therefore superfluous and unnecessary such that any favorable decision by this Court would not redress Plaintiffs' alleged injuries.  Furthermore, the Complaint seeks the sort of 'obey the law' injunctions courts disfavor and routinely decline to grant.  *See e.g., Sixth Angel Shepherd Rescue*, 790 F. Supp. 2d at 352; *Powell Duffryn Terminals*, 913 F.2d at 83; *Chapman v. CKE Rests. Holdings, Inc.*, 2020 U.S. Dist. LEXIS 43020, at *17 (E.D.N.C. Mar. 12, 2020).

Given the foregoing, Plaintiffs have failed to meet their burden of establishing standing with respect to alleged activities at the Mercer County location.[6]  Plaintiffs' claims concerning the CSI Facility, therefore, must be dismissed.

## POINT II

### PLAINTIFFS' 2011 AND 2012 CLAIMS ARE BARRED BY THE STATUTE OF LIMITATIONS

Plaintiffs' allege that on specific dates in 2011 – 2012 that CSI conducted tests of CN, CS, and/or HC outdoors at the Facility in violation of the CAA and the APCA. Complaint ¶ 35 (a)-(g). These alleged violations are barred by the applicable statute of limitations.

Claims under the APCA are subject to a seven year statute of limitations. 35 Pa. Stat. Ann. § 4010.3. The CAA does not specify a limitations period for when an enforcement action must brought. Accordingly, the general federal statute of limitations applies to the claims under the CAA. *See e.g., Powell Duffryn Terminals*, 913 F.2d at 73-77 ; *New Jersey v. RRI Energy Mid-Atlantic Power Holdings, LLC*, 960 F. Supp. 2d 512, 523-24 (E.D. Pa. 2013); *Sierra Club v. Otter Tail Power Co*., 615 F.3d 1008, 1013-14 (8th Cir. 2010); *Nat'l Parks Conservation Ass'n, Inc. v. Tenn. Valley Auth*., 502 F.3d 1316, 1322 (11th Cir. 2007); *Sierra Club v. Portland GE*, 663 F. Supp. 2d 983, 991 (D. Or. 2009).  The federal statute of limitations states in part that a "suit or proceeding for the enforcement of any civil fine, penalty, or forfeiture, pecuniary or otherwise, shall not be entertained unless commenced within five years from the date when the claim first accrued . . . ." 28 U.S.C.S. § 2462. Under 28 U.S.C. § 2462.  A claim first accrues when the alleged violation occurs. *Portland GE*, 663 F. Supp. 2d at 991 (citing *3M Co. v. Browner*, 17 F.3d 1453,

---

[6]   For these same reasons as detailed above in Point I, Plaintiffs' claims are moot.  *See L.E.A.D. Grp. of Berks*, 1999 U.S. Dist. LEXIS at *62 (finding claim for injunctive relief moot); *see also Sierra Club v. Energy Future Holdings, Corp.*, 2013 U.S. Dist. LEXIS 137543, at *31-32 (E.D. Tex. Feb. 28, 2013) (citing *WildEarth Guardians v. Pub. Serv. Co.*, 690 F.3d 1174, 1182 (10th Cir. 2012)); *Natural Resources Defense Council v. Texaco Ref. & Mktg.*, 2 F.3d 493, 502-03 (3d Cir. 1993).

1461-62 (D.C. Cir. 1994); 28 U.S.C. § 2462); *see also RRI Energy Mid-Atlantic Power Holdings, LLC*, 960 F. Supp. 2d at 524.

Plaintiffs' sixty-day notice was served on CSI on April 23, 2021.  Smith Aff. ¶ 35.  Since the claims in Paragraph 35 (a)-(g) of the Complaint occurred in 2011 and 2012, the notice was untimely under both the CAA five year limitations period and the APCA seven year limitations period to support the 2011 and 2012 claims in Paragraph 35 (a)-(g) of the Complaint.  Therefore, these claims are time barred, and must be dismissed.

## POINT III

## PLAINTIFFS FAIL TO STATE A CLAIM
## FOR WHICH RELIEF CAN BE GRANTED

The CAA provides for citizen suits, in pertinent part, "against any person …who is alleged to have violated (if there is evidence that the alleged violation has been repeated) or to be in violation of … an emission standard or limitation under this chapter[.]"  42 U.S.C. § 7604(a).  In other words, the CAA provides private right of actions for either ongoing or repeated violations. Plaintiffs, however, have failed to state a claim for either an ongoing or any repeated violation.

### A.     Plaintiffs Failed to Adequately Plead An Ongoing Violation

Plaintiffs' allegations of repeated and consistent violations in the Complaint, which are purportedly based on CSI's test range logs, end in January 2019.  Complaint, ¶¶ 35, 48.  Plaintiffs then assert ongoing violations merely "upon information and belief."  Complaint, ¶¶ 38, 50.  Such allegations are insufficient and lack plausibility.

As detailed above, Plaintiffs fail to allege any "first hand" accounts of alleged improper testing of tear gas in the last 6 years.  *Compare* Complaint, ¶¶ 32-34.  Moreover, the DEP's recent inspection of CSI's activities in Mercer County confirm that there have been no violations of CSI's Air Permit, the CAA or the ACPA for at least the last two years. *See generally* DEP Report.

Accordingly, Plaintiffs' have failed to state a cause of action for ongoing violations.  *Twombly*, 550 U.S. at 555; *Iqbal*, 556 U.S. 662.

### B.      Plaintiffs' Claims of Past Violations Lack Plausibility

Plaintiffs allege that CSI has violated the CAA and the APCA by testing tear gas products containing CN, CS, and/or HC outdoors at its Mercer County facility in violation of its Air Permit, the CAA and the ACPA.  Complaint ¶ ¶ 61, 71.  Such claims, however, fail to state a claim based on the testing range logs relied upon in the Compliant as well as the DEP's very recent compliance review of CSI's compliance with its Air Permit, CAA and ACPA.

CSI is not permitted to, nor does it, test products outdoors at the Facility that contain CN, HC or CS.  *See* Smith Aff., ¶ 18; Air Permit, p. 45.  Instead, CSI either tests these products in CSI's Facility's Test Chamber, or tests an inert version of the product, which does not contain CN, HC or CS, outdoors at the Facility.  *See* Air Permit, p. 45.  Only products that do not result in CS, CN or HC being released are conducted outdoors at the Facility, in compliance with the requirements of CSI's Air Permit.  *Id.*

The outdoor testing of products at the CSI Facility is designated as Source 111 in the Facility's Air Permit, which allows CSI to emit fugitive particulate emissions associated with the testing of products that do not contain CN, HC or CS.  *Id.*  Section D of the Air Permit requires that CSI keep a daily log of the field testing that documents: date and time of all tests; weather conditions including wind direction and speed; types and quantities of units tested; whether any emissions crossed property lines; and, any weather conditions which cause the smoke to fail to dissipate.  *Id.* p. 29.  The Air Permit further requires CSI to stop field testing if emissions cross property lines, and, to stop field testing if weather conditions create a situation where the smoke is not dissipating.  *Id.*.  CSI diligently keeps these required logs, and stops testing if any visible particulate emissions from such testing crosses property lines.  Smith Aff. ¶ 24.

18

To support their allegation, Plaintiffs point to CSI's test range logs.  *See* Complaint ¶¶ 41, 43.  However, the actual test logs referenced in the Complaint confirm that CSI did not test any products outdoors at the Mercer County Facility that contained CN, CS, or HC on the dates alleged.  *See* Affirmation of Yvonne Hennessey, dated September 13, 2021, ("Hennessey Aff."), Exhibit A..  As detailed in affidavits previously shared with Plaintiffs, on each and every testing date alleged in the Complaint relative to the CSI Facility (Complaint, ¶ 35 (a)-(w)), the rounds tested were inert and did not contain CS, CN or HC.  *See, generally, id.*  Thus, CSI did not test any products containing HC, CN, or CS outside at the CSI Facility on the dates alleged in the Complaint.

Given that no products containing HC, CN, or CS were tested outside at CSI's Facility in Mercer County on the dates alleged by Plaintiffs, Plaintiffs have failed to state a claim that CSI has violated the CAA, the Pennsylvania APCA, or CSI's Air Permit.  Plaintiffs' claims related to alleged violations at CSI's Mercer County Facility, therefore, must be dismissed.

## CONCLUSION

For all the reasons set forth herein, Plaintiffs' claims should be dismissed with prejudice *in toto*.

Dated:   September 13, 2021                    **BARCLAY DAMON, LLP**
   Albany, New York

           By: ___/s *Yvonne E. Hennessey*

            Yvonne E. Hennessey
            *Attorney for Combined Systems, Inc.*
            80 State Street
            Albany, New York 12207
            (518) 429-4200